UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| STELLAR RESTORATION SERVICES, LLC § § § | |
| v. § | CIVIL NO. 4:20-CV-382-SDJ |
| § JAMES CHRISTOPHER COURTNEY § a/k/a CHRIS COURTNEY d/b/a § CHESTNUT PLAZA § CONDOMINIUM, ET AL. § | |

**MEMORANDUM ADOPTING REPORT AND**
**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On March 11, 2021, the Magistrate Judge entered proposed findings of fact and recommendations (the "Report"), (Dkt. #33), that Defendants James Christopher Courtney's ("Courtney") and JC Enterprises I, LLC's ("JC Enterprises") Motion to Dismiss, (Dkt. #10), be denied. Defendants filed objections to the Report (the "Objections"), (Dkt. #34), and Plaintiff Stellar Restoration Services, LLC ("Stellar Restoration") filed a response (the "Response"), (Dkt. #36).

The Court has conducted a *de novo* review of the Objections and is of the opinion that the findings and conclusions of the Magistrate Judge are correct and that the Objections are without merit as to the ultimate findings of the Magistrate Judge. The Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court.

1

## BACKGROUND

This matter boils down to whether Courtney or JC Enterprises can be bound to a forum-selection clause. Courtney is both the President of Chestnut Plaza Condominium Association (the "Association") and the owner of JC Enterprises, a Missouri business selling specialty sportscars. *See* (Dkt. #8 at 3); (Dkt. #10 at 7); (Dkt. #10-2 at 3). JC Enterprises holds legal title over one of the condominium units in a commercial complex allegedly called Chestnut Plaza Condominiums. *See* (Dkt. #8 at 3); (Dkt. #10 at 7); (Dkt. #10-2 at 3); (Dkt. #31).

In February 2020, Courtney and Stellar Restoration's sales consultant signed a Restoration Services Agreement (the "Agreement"). *See* (Dkt. #13-4 at 4). The Agreement contains a forum-selection clause, which provides that "[e]xclusive forum and venue for any action brought pursuant to the terms of this Agreement . . . shall be in Collin County, Texas." (Dkt. #13-4 at 4) (emphasis omitted). Courtney signed the document as "President" of the "Customer," who the Agreement defines as "Chestnut Plaza Condo Assoc." (Dkt. #13-4 at 2, 4). The Agreement further defines the "Subject Property" as "Chestnut Plaza Condominium[,] 22Ksf of standing seam, and located at the following address: 1950 E. Chestnut Expwy Springfield MO 65802." (Dkt. #13-4 at 2). The Agreement also provides:

> Customer represents and warrants that the Subject Property is insured by an insurance carrier policy ("Policy") owned by Customer for Replacement Cost Value . . . .
>
> The party signing for Customer represents and warrants his authority to bind Customer hereto and/or to bind the owner of the Subject Property, and Policy, to this Agreement . . . .

> The parties, intending to be legally bound by its terms, have caused this Agreement to be executed individually and/or by their authorized representatives on the dates set forth below . . . .

(Dkt. #13-4 at 2, 4). Though the Agreement identifies only building 1950 on East Chestnut Expressway, the insurance policy in the record (the "Policy") covers buildings 1950 through 1980 on East Chestnut Expressway. *See* (Dkt. #13-4 at 2); (Dkt. #13-5 at 4). Further, the Policy's owner is "Chestnut Plaza Condominiums," not "Chestnut Plaza Condominium *Association*." *See* (Dkt. #13-5 at 4). The distinction bears significance because the record also contains registration documents for the fictitious business name "Chestnut Plaza Condominiums" (the "Fictitious Name"), which is wholly owned by Courtney. (Dkt. #13-2). The Fictitious Name is registered only as to building 1950 on East Chestnut Expressway, not buildings 1950 through 1980. *See* (Dkt. #13-2).

The Magistrate Judge's Report found that, due to the Agreement's ambiguous language, Courtney and JC Enterprises are bound to the forum-selection clause at this early stage of litigation. *See* (Dkt. #33 at 32–34). The Report recommended that (1) Defendants' Motion be denied with respect to dismissing Defendants, and (2) Defendants' request to transfer this matter to the Western District of Missouri be denied. *See* (Dkt. #33 at 32–39).

## OBJECTIONS TO REPORT AND RECOMMENDATION

Defendants raise two Objections to the Magistrate Judge's Report. Defendants assert that: (1) the Agreement unambiguously binds only the Association, and (2) if

3

the Agreement is ambiguous, such ambiguity requires dismissing Courtney and JC Enterprises. *See* (Dkt. #34).

**A. Whether the Agreement is Ambiguous**

Defendants first Objection focuses on the phrase "and/or": "[T]he only reasonable interpretation of 'and/or' in these provisions is that the party signing is 1) signing both in his individual **AND** his representative capacity; ***or*** 2) [a] signing either in his individual **OR** [b] representative capacity, but not both . . . ." (Dkt. #34 at 3). According to Defendants, due to "the surrounding circumstances of the Agreement," Courtney signed the document only in his capacity as President of the Association, and, thus, neither Courtney nor JC Enterprises are bound. *See* (Dkt. #34 at 3–4). In other words, Defendants argue that "the surrounding circumstances of the Agreement" compel the Court to determine Courtney signed the Agreement in his representative capacity and nothing more. *See* (Dkt. #34 at 3–4). This argument is unpersuasive.

First, if the Court accepts Defendants' reading of "and/or," the inquiry should end. Accepting Defendants' understanding of "and/or" concedes that the Agreement is ambiguous. *See* Kenneth A. Adams & Alan S. Kaye, *Revisiting the Ambiguity of "And" and "Or" in Legal Drafting*, 80 St. John's L. Rev. 1167, 1180 (2006) ("[A]uthorities on legal drafting have stated *or* [in "and/or"] is ambiguous, in that it can be 'inclusive,' meaning *A or B, or both*, or it can be 'exclusive,' meaning *A or B, but not both*."); William Strunk, Jr. & E.B. White, The Elements of Style 40 (4th ed. 2000) (stating that "and/or" is "[a] device, or shortcut, that damages a

sentence and often leads to confusion or ambiguity."). Indeed, courts have long noted that the term "and/or" can be ambiguous.[1] As the Magistrate Judge noted, "[o]nce a court determines a contractual provision is ambiguous, the meaning of that provision and the parties' intent are questions of fact." (Dkt. #33 at 33) (citing *Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 768 (5th Cir. 1995)). Here, Defendants urge the Court to accept their interpretation of "and/or," drawn from the "surrounding circumstances," and conclude that Courtney signed the Agreement only in his representative capacity. *See* (Dkt. #34 at 2–5). But drawing from the "surrounding circumstances" of the Agreement requires the Court to examine extrinsic evidence and answer a question of fact. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (holding that an ambiguous contract permits the court to consider the parties' interpretation and admit extraneous evidence to determine the instrument's meaning); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex. 1980) (same). It is simply too early to answer questions of fact at the dismissal stage. *Cf. Nevels v. Ford Motor Co.*, 439 F.2d 251,

---

[1] *See, e.g.*, *United States v. Bush*, 70 F.3d 557, 562 (10th Cir. 1995) (regarding the conjunction "and/or," stating that "[s]uch vague language is strongly disfavored"); *Quinn v. BJC Health Sys.*, 364 F. Supp. 2d 1046, 1050 n.4 (E.D. Mo. 2005) (noting that, "[o]rdinarily, the Court refrains from using the term 'and/or' because the Court finds it to be ambiguous"). It appears, in modern parlance, the accepted reading of "and/or" understands "or" in its inclusive form. *See* THE CHICAGO MANUAL OF STYLE ¶ 5.250 (17th ed. 2017) ("Where [and/or] seems needed {take a sleeping pill and/or a warm drink }, try . . . *or* . . . , *or both* {take a sleeping pill or a warm drink, or both}."); R.W. BURCHFIELD, THE NEW FOWLER'S MODERN ENG. USAGE 53 (3d ed. 2000) ("The more comfortable way of expressing the same idea is to use '*X or Y or both,*' or, in many contexts, just 'or.'"); *And/Or*, MERRIAM-WEBSTER'S DICTIONARY ("used as a function word to indicate that two words or expressions are to be taken together or individually").

256–57 (5th Cir. 1971) ("The ultimate end of all litigation is the ascertainment and rendition of truth.").

Even if the meaning of "and/or" is not ambiguous on its face, its application to Courtney and JC Enterprises is ambiguous in the present context. As the Report notes, what constitutes the "Subject Property" is ambiguous as a matter of law. *See* (Dkt. #33 at 33). The Agreement partially defines the Subject Property as Chestnut Plaza Condominiums, which implicates buildings 1950 through 1980 on East Chestnut Expressway. *See* (Dkt. #13-4 at 2); (Dkt. #13-5 at 4). However, only building 1950 is listed as the Subject Property. *See* (Dkt. #13-4 at 2). Further, it is unclear to what "22Ksf of standing seam" refers. From the record, it appears that "22Ksf of standing seam" may mean "22,000 square feet of standing seam." *See* (Dkt. #13-5 at 6) (copy of insurance claim, listing 21,139.63 square feet of "R&R Standing seam metal roofing" as an itemized expense). This raises the question: Would replacing 22,000 square feet of "standing seam" affect only building 1950, which is JC Enterprises' unit, or would it affect all units in the condominium complex?

Just as the Court cannot presently divine what constitutes the Subject Property, the Court also cannot determine who is "the owner" of the Subject Property. Only after answering these preliminary questions can the Court determine how the "and/or" language operates in the Agreement. Resolving these ambiguities requires the Court to answer questions of fact, which are more appropriately addressed after discovery commences. *See National Union*, 907 S.W.2d at 520; *R & P Enterprises*,

6

596 S.W.2d at 519. At this juncture, JC Enterprises is bound to the Agreement for jurisdictional purposes.

"The owner" of the Policy presents the same problem. From the insurance claim submitted, it appears that the Policy covers buildings 1950 through 1980 on East Chestnut Expressway. *See* (Dkt. #13-5 at 4). This suggests that "the owner" of the Policy is the Association. However, the Policy names "Chestnut Plaza Condominiums" as the insured party, not "Chestnut Plaza Condominiums *Association*." (Dkt. #13-5 at 4). Whether this was merely a clerical error or instead a reference to Courtney by way of his Fictitious Name ("Chestnut Plaza Condominiums") is a question of fact. Accordingly, the identity of "the owner" is uncertain, and the meaning of the Agreement is ambiguous as a matter of law. Determining the parties' intent is a question of fact better addressed at a later stage of litigation. *See National Union*, 907 S.W.2d at 520; *R & P Enterprises*, 596 S.W.2d at 519. Thus, Courtney is bound to the Agreement for jurisdictional purposes.

## B. Whether the Agreement's Ambiguity Requires Defendants' Dismissal

Next, Defendants argue that, if the Agreement is ambiguous, then the ambiguity "is fatal to Plaintiff's argument on jurisdiction." *See* (Dkt. #34 at 5). The Court finds this Objection unavailing as well.

First, Defendants cite *Taylor v. Investors Associates Inc.*, 29 F.3d 211 (5th Cir. 1994), for the proposition that "the exclusion of language expressing clear intent to bind anyone other than the named parties 'should be disregarded as purposeful.'" (Dkt. #34 at 5) (citing *Taylor*, 29 F.3d at 215)). But *Taylor* undermines Defendants' position. In *Taylor*, the question before the Fifth Circuit was whether an arbitration

7

clause binding the "undersigned, [its] heirs, executors, administrators and assigns" could also bind a securities broker-dealer. *Taylor*, 29 F.3d at 213, 215. The Fifth Circuit answered in the negative, as the arbitration clause's silence as to "brokers" must preclude its application to such parties. *Id.* at 215. Here, the opposite is true: The Agreement does not omit "owner of Subject Property" or "owner of Policy" from its terms. *See* (Dkt. #13-4 at 4). It explicitly names them. (Dkt. #13-4 at 4). Therefore, *Taylor*, when read in its proper context, counsels against dismissing Courtney and JC Enterprises.

Next, Defendants cite the doctrine of *contra proferentem* to argue that the Agreement's ambiguities should be construed against Stellar Restoration. *See* (Dkt. #34 at 6). As an initial matter, this is the first time that Defendants raise this argument, and, as such, it is not properly before the Court. *See Finley v. Johnson*, 243 F.3d 215, 219 n.3 (5th Cir. 2001) (citing *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992)) ("We have held that issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge."); *see also Baylor Health Care Sys. v. Equitable Plan Servs., Inc.*, 955 F.Supp.2d 678, 688–89 (N.D. Tex. 2013) (reprimanding party for raising arguments for the first time in objections, as the court was not put on notice and "[t]he court is not a mind reader").

However, even if Defendants had timely raised this argument, the Court would not apply *contra proferentem* prematurely. *Contra proferentem* stands for the principle that ambiguities in a contract are to be construed against the drafting party.

*See Songcharoen v. Plastic & Hand Surgery Assocs., PLLC*, 561 F.App'x 327, 339 (5th Cir. 2014) (per curiam) (discussing the doctrine under Mississippi law). The doctrine is "based on the idea that the drafting party is likely to protect his own interest more than that of the other party," *id.*, and is often invoked in scenarios where there is unequal bargaining power, such as insurance contracts, *see Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 n.1 (Tex. 1998); *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1451–52 (5th Cir. 1995). "Under Texas law, a contract is generally construed against its drafter only *as a last resort*, after application of ordinary rules of construction leave reasonable doubt as to its interpretation." *ACE Am. Ins. Co. v. Freeport Wielding & Fabricating, Inc.*, 699 F.3d 832, 842 (5th Cir. 2012) (emphasis added) (citations omitted).

Here, Defendants have not adequately explained why the Court should rely on this "last resort" so early in the litigation. Again, this matter is in its procedural infancy, with virtually no discovery conducted. The Court is unable to apply any ordinary rule of construction, which is a prerequisite to applying *contra proferentem*. Further, the Court is not convinced, at this stage, that this matter presents a situation of unequal bargaining power: Courtney has served as President of the Association for more than a decade, which, at the least, evidences experience in his role. *See* (Dkt. #10-2 at 3); *see also Hunt Bldg. Co., Ltd. v. John Hancock Life Ins. Co.*, No. EP-11-cv-295-DCG, 2013 WL 12094216, at *19 (W.D. Tex. July 3, 2013) ("[W]here extrinsic evidence does not yield a conclusive answer to the parties' intent, as a matter of last resort, a court may employ the rule of *contra proferentem*—i.e. 'a

9

contract must be construed most strongly against the party who prepared it and favorably to a party who had *no voice* in the selection of its language.'").

To the Court's best knowledge, most cases in which courts have considered applying the doctrine of *contra proferentem* involve motions for summary judgment and motions for judgment as a matter of law where discovery had either commenced or been completed. *See ACE American*, 699 F.3d at 835; *Songcharoen*, 561 F.App'x at 331, 333. It could be that after the parties exchange documents and take depositions, extrinsic evidence will render the parties' intent clear, and the Court need not rely on *contra proferentem*. *See Songcharoen*, 561 F.App'x at 333 (holding that the district court did not abuse its discretion when it declined to apply *contra proferentem*, as extrinsic evidence showed both parties were actively involved in drafting an agreement). Accordingly, to apply the doctrine at this early state of litigation would be premature.

As such, Defendants Objections are **OVERRULED**.

## Conclusion

Based on the foregoing, Defendants Motion to Dismiss, (Dkt. #10), is hereby **DENIED**.

It is further **ORDERED** that Defendants' Motion to Strike, (Dkt. #17), which seeks to strike declarations not addressed in the Report and not considered by this Court in reaching the instant decision, is hereby **DENIED AS MOOT**.

**So ORDERED and SIGNED this 30th day of March, 2021.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE